UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
Case No. _____

| | |
|---|---|
| Annjanette Dunbar, )<br>)<br>          Plaintiff, )<br>vs. )<br>)<br>IT-oLogy, )<br>)<br>          Defendant(s). )<br>_____ ) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

This action is brought to remedy (1) discrimination on the basis of race and sex, and (2) retaliation in the terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") and (3) discrimination on the basis of disability and (4) retaliation in the terms, conditions and privileges of employment in violation of Americans with Disabilities Act of 1990("ADA"), 42 U.S.C. §§ 12101, 12112(b), as amended by the Americans with Disabilities Act Amendments Act ("ADAAA"), Pub. L. No. 110-325, §8; 122 Stat. 3553 (Sept. 25, 2008). This action is also brought to remedy (5) discrimination and retaliation under the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA").

This Court has jurisdiction of this matter under 42 U.S.C. §2000e-5(f), and under 28 U.S.C. §1331 and 1343(a)(4).

Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b) because Defendant operates a business located within the District of South Carolina, Columbia Division, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and continue to occur, within the District of South Carolina, Columbia Division.

1

The Plaintiff would show unto this Honorable Court as follows:

1. Plaintiff is an African American female resident of Columbia, South Carolina, who was pregnant in November 2016 until termination March 2017 and after, and who suffered complications of pregnancy that left her temporarily disabled.

2. Defendant, IT-oLogy, is a registered 501(c)3 non profit entity, conducting business, in Columbia, South Carolina at 1301 Gervais Street, Suite 200. IT-oLogy is a nonprofit working to grow the number of IT professionals in South Carolina and offers Top IT certification courses to help you earn higher salaries, career advancement, and universal skills.

3. Defendant is financed in part by the South Carolina Research Authority ("SCRA"), the fiscal agent created by the South Carolina Legislature that held State Funds provided to Defendant for operation.

4. Defendant employs more than 15 individuals and is an employer within the meaning of 42 U.S.C. §12111 5(A) and 29 U.S.C. §2611(4).

5. Plaintiff received a notice of right to sue dated December 28, 2017 from the Equal Employment Opportunity Commission regarding her charge number 436-2017-00720. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII of the Civil Rights Act of 1964 and ADA and EPA Laws.

6. Plaintiff was employed with Defendant, IT-oLogy, from June 4, 2015 to March 31, 2017, most recently as an IT Course Power Project Manager.

7. Plaintiff was performing the duties of the Coursepower Project Manager after termination in February 2016 and the work of the Project Coordinator after

resignation. Plaintiff was performing satisfactorily until she questioned Defendant about pay discrepancies.

8. Specifically Plaintiff inquired around October 2016 with Defendant the following with regard to compensation:

   A. When Plaintiff was formally asked to accept the Project Manager ("PM") position, Plaintiff was told that she would receive the PM salary of the former PM, a white male, which was $100 per hour. However, the Financial Director informed Plaintiff that she would receive $50 per hour as PM.

   B. When Plaintiff learned that Defendant continued to bill SCRA $100 per hour for the PM salary, when she received $50 per hour, she questioned this falsification of records. She also questioned why Defendant billed SCRA $75 per hour for the Project Coordinator salary, when the newly hired Project Coordinator, an African American female, only received $21 per hour. Plaintiff was summoned by the HR Representative of Defendant staffing firm and told not to ask about the salaries anymore and Plaintiff was denied further access to the invoices to SCRA.

9. On the various dates and occasions, Plaintiff was supervised and disciplined and compensated in an unfair, unequal, and/or harassing way which segregated her and adversely affected her status as an employee, because of her race, sex or complaints, including and not limited to, those referenced above. Similarly situated employees of a different race and sex did not receive this treatment.

10. On the various dates and occasions, Plaintiff was supervised and disciplined, in an unfair, unequal, and/or harassing way which segregated her and adversely affected her status as an employee, because of her disability.

11. Plaintiff discovered she was pregnant in November 2016, and once she began having complications and after she asked about pay discrepancies, she was subjected to adverse employment action and hostile work environment to include the following:

    A. Plaintiff began to be reprimanded by Defendant over rules that had not been in place or enforced in the past. Defendant President even reprimanded Plaintiff while she was having a complication in November, to the point that she asked Plaintiff if someone needed to transport Plaintiff to the doctor.

    B. One of Plaintiff's contract was ended in January 2017 stating Coursepower Program was out of funding.

    C. Plaintiff was questioned by the President and HR about her pregnancy regarding progress and her health complications.

    D. Plaintiff was excluded from staff meetings and was excluded from one meeting in March, the day she became so ill, she had to leave work immediately. And, after going to the ER and missing work due to doctor's appointments, Plaintiff contacted Defendant about her work and health status on March 20, 2017.

    E. Plaintiff was notified via an email dated March 21, 2017, that her contract was ending for insubordination, effective March 31, 2017.

12. Defendant exhibited a pattern and practice of discrimination as other African American employees were treated differently in the terms conditions and privileges of employment.

13. Plaintiff and her African American co-worker, V. Renee Bussey, were subjected to race and gender discrimination in the following ways:

    A. Neither were compensated the same rate as their white male co workers performing the same or similar duties and/or job titles.

    B. Both were subjected to heightened scrutiny as they were reprimanded for policy violations that they did not know of prior to the violation.

    C. Both were required to perform their work under more surveillance than other co workers as they were required to keep their doors open and keep a current calendar and were prohibited from traveling together.

    D. No white employees were told to keep calendars current, to keep office doors open or told that they could not travel together.

    E. Both were treated differently in the manner of referral bonus and discharge.

14. Plaintiff complained to Defendant about the unfair wages and the discriminatory treatment and was disciplined and ultimately terminated for voicing concerns.

15. Plaintiff informed Defendant about complications to pregnancy and was visibly ill and was disciplined and ultimately terminated for missing work due to complications of pregnancy.

16. Defendant was on notice, or should have been on notice, of the actions of its subordinates or employees, and all failed to correct such discriminatory and retaliatory actions of its employees.

17. As a result of the acts of discrimination and retaliation within Defendant's employment practices and work environment, Plaintiff has suffered loss of employment position, loss of paid time off, compensatory damage, emotional harm, as well as harm to reputation.

18. Defendant's acts of discrimination and retaliation within Defendant's employment practices and work environment were performed with malice and reckless indifference to Plaintiff's protected civil rights.

19. Defendant's facially neutral policies and procedures were applied in a discriminatory and retaliatory manner, and in a manner which had a disparate impact on Plaintiff and potentially other African American employees similarly situated.

## FIRST CAUSE OF ACTION
### (TITLE VII)

20. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 19 of this Complaint.

21. Plaintiff is a member of a protected class as an African American female and was performing satisfactorily up and until she questioned pay discrepancies and suffered complications of pregnancy. Then Plaintiff was subjected to and complained about unequal treatment based on race and gender and was then reprimanded and terminated in a discriminatory and retaliatory manner. Defendant had no legitimate business reason for its treatment toward Plaintiff.

22. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex and race in violation of Title VII; and retaliated against Plaintiff after her inquiries and complaints.

23. Defendant treated similarly situated white male employees in a manner unequal to the treatment Plaintiff received in terms of pay; and Defendant treated similarly situated white employees in a manner unequal to the treatment Plaintiff received in terms conditions and privileges of employment.

24. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
### (ADA)

25. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 of this Complaint.

26. Plaintiff is a member of a protected class an employee who was temporarily disabled due to complications from pregnant or as an employee perceived to be disabled from performing her job due to complications from pregnancy.

27. Plaintiff was performing satisfactorily up and until she discovered and informed Defendant that she was pregnant in November 2016, at which time she began to be subjected to inquiries regarding her pregnancy as well as discipline and termination due to missed work as a result of known pregnancy complications.

28. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disability in violation of in violation of the 42 U.S.C. §§ 12101, 12112(b), as amended by the Americans with Disabilities Act Amendments Act ("ADAAA"), Pub. L. No. 110-325, §8; 122 Stat. 3553 (Sept. 25, 2008) , by terminating Plaintiff for missed work due to pregnancy complications, by failing to accommodate Plaintiff; by perceiving Plaintiff as disabled and unfit to work; and retaliated against Plaintiff with discipline and termination for her complaints about such unfair treatment.

29. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
## (EQUAL PAY ACT )

30. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 29 of this Complaint.

31. Defendant has discriminated against the Plaintiff within the meaning of the Equal Pay Act of 1963 ("EPA") in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the EPA, by providing them with lower pay than similarly situated white male colleagues on the basis of gender, even though Plaintiff and all others similarly situated performed similar duties requiring the same skill, effort, and responsibility of male counterparts.

32. Plaintiff and similarly situated male employees all perform similar job duties and functions. Plaintiff and similarly situated white males all performed jobs that required equal skill, effort, and responsibility, and are or were performing under similar working conditions.

33. Defendant discriminated against Plaintiff by subjecting her to discriminatory pay, discriminatory denials of bonuses, other compensation incentives or promotions, and any other forms of discrimination in compensation in violation of the Equal Pay Act to be discovered.

34. The differential in pay between Plaintiff and white male employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

35. Defendant caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the EPA.

36. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because Defendant has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

37. As a result of Defendant's conduct as alleged in this Complaint, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

38. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages

for all willful violations, prejudgment interest, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

39. Attorney's fees should be awarded under 29 U.S.C. §216(b).

## FOURTH CAUSE OF ACTION
### (WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY)

40. Paragraphs 1 - 39 above are hereby expressly incorporated as if set forth herein verbatim.

41. Plaintiff's termination was a direct result of her initial inquiry into the Defendant falsification of invoices to SCRA, an entity created by the South Carolina Legislature that held State Funds provided to Defendant for operation.

42. Defendant's reaction to Plaintiff's inquiries about the fraud being committed against a government created entity, was to reprimand Plaintiff for her inquiries and then subsequent termination.

43. Defendant's conduct of discharging Plaintiff because of her opposition to fraudulent falsification of invoices submitted to SCRA, constitutes discharge in violation of public policy against fraud and theft of state funds.

44. Defendant's unlawful conduct caused financial harm and other damage to Plaintiff.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter a judgment:

A. Declaring that the acts and practices complained of are in violation of Title VII, ADA and EPA; as well as wrongful termination in violation of public policy;

B. Enjoining and permanently restraining these violations of Title VII and ADA and EPA;

C. Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory and retaliatory treatment of her, and make her whole for all earnings she would have received but for Defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, pension and other lost benefits, and liquidated damages pursuant to Title VII ADA and EPA;

D. Awarding Plaintiff costs of this action together with reasonable attorney's fees as provided under Title VII and ADA and EPA; and available for wrongful termination in violation of public policy;

E. Directing Defendant to pay Plaintiff compensatory damages and damages for his emotional distress, mental anguish and humiliation, and other compensatory and punitive damages allowable under Title VII and ADA and EPA, and available for wrongful termination in violation of public policy in the amount to be determined by a jury; and,

F. Awarding Plaintiff such other and further relief as this Court deems just and proper.

WUKELA LAW FIRM

By:   s/ Pheobe A. Clark
**Pheobe A. Clark**
Federal ID No. 9888
Post Office Box 13057
Florence, SC 29504-3057
Phone: (843) 669-5634
Fax: (843) 669-5150

March 22, 2018